**In re COOK UNITED, INC., Debtor.**

**Bankruptcy No. 87–11371.**

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

April 2, 1998.

Theodore M. Dunn, Jr., Janik & Dunn, Cleveland, OH, for trustee.

Robert D. Storey, Cleveland, OH, trustee.

## *MEMORANDUM OF OPINION AND ORDER*

RANDOLPH BAXTER, Bankruptcy Judge.

This matter is before the Court for a hearing upon the Trustee's Amended Final Report in the Cook United, Inc. (the Debtor) case and the objection filed by the Office of the United States Trustee (UST) regarding compensation to be paid to Robert D. Storey (the Trustee).

Upon a hearing on the matter, an examination of the record, generally, and consideration of the arguments of counsel, the following findings of fact and conclusions of law are rendered.

The Debtor's case was filed on April 22, 1987, as a voluntary Chapter 11 case and was converted for liquidation proceedings under Chapter 7 on November 24, 1987. Thereupon, (the Trustee) was duly appointed to administer the estate's assets. On or about October 12, 1995, the Trustee filed his Application for Final Compensation and Reimbursement of Expenses. In response, the UST filed an objection. An earlier hearing was conducted to determine whether the Trustee should have invested estate funds in interest bearing accounts during 1989–1992. (Transfer Order, 1–5–96).[1] Upon a duly noticed hearing, the Court determined "that trustees should not allow funds to remain in noninterest bearing accounts for long periods of time." Order, 1–23–97. The Court further ruled, *inter alia:*

---

1. This issue was heard before the Honorable William T. Bodoh for determination.

The language of 11 U.S.C. § 345(a) does not make this obligation permissive. Whether a trustee should be liable for unrealized interest income resulting from failure to invest estate funds which may remain idle for some period of time is a very fact-specific determination that is not now before us. Rather, counsel for the Trustee and the United States Trustee ask the Court to determine only whether there is a recognized general obligation of a trustee to make productive use of estate assets. *Thus, whether this trustee may be liable to have his compensation reduced to reflect any such obligation is reserved for later determination.* Order, dated 1–23–97. (Emphasis added.)

As indicated above, the Court made no specific finding of liability regarding whether the present Trustee was liable to have his compensation reduced in this case, but did determine that the language of § 345(a) is not permissive and that trustees should not allow funds to remain in noninterest bearing accounts for long periods of time. In furtherance of that earlier ruling, the Court has examined the Trustee's Final Report, as amended, and his Supplemental Report in determining what would constitute appropriate Trustee compensation.

Section 326 of the Bankruptcy Code applies limitations on the compensation of case trustees. Subsection (a) provides:

(a) In a case under Chapter 7 or 11, the court may allow compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services. . . .

It is undisputed that certain estate funds remained in noninterest bearing accounts for approximately a three-year period. It is also undisputed that those funds were not deliberately or intentionally placed in noninterest bearing accounts. Indeed, the UST and the Trustee stipulated that a portion of the estate's funds remained in noninterest bearing accounts due to inadvertence, misunderstanding, and/or miscommunication between the Trustee, his counsel and bank personnel. (Joint Stip. No. 7, filed 9–16–97). That stipulation reflects an occurrence which appears to be aberrational when compared to the Trustee's overall administration of estate funds.

The Trustee maintained two bank accounts for the purpose of disbursements to creditors and for payment of administrative costs and expenses. Between 1989–1990, a total of 2.6 Million was expended in that regard. From the evidence adduced, it was the Trustee's usual pattern to invest the estate's funds. Prior to the subject period, the Trustee invested certain estate funds in certificates of deposits (C.Ds.). In 1988 and 1989, he invested $450,723.33 in C.Ds. Id., No. 4. Thereafter, he periodically increased the investments in C.Ds. with funds not required for estate administration. Id., at No. 5. Eventually, the funds invested in C.Ds. increased to $4,028,745.33. Id., No. 6.

Throughout the subject period, the Trustee submitted the required interim reports to the UST pursuant to the policies, guidelines and directives of the UST. Id., No. 7. Those reports were received by the UST and reflected all transactions and respective account balances on the subject accounts maintained at National City Bank (the Bank). Id. Interestingly, it was the Bank which informed the Trustee that the UST had inquired regarding certain funds not being placed in interest bearing accounts, as opposed to the UST having informed the Trustee. Both the UST and the Trustee agree that was the first time either the Bank or the UST had informed the Trustee of this occurrence. Id., No. 10. The Trustee promptly instructed the Bank to transfer $1.45 Million to interest bearing accounts on December 19, 1991. Neither before or after the period in question did estate funds remain in noninterest bearing accounts. (Trustee's Brief, 12–19–95).

Although the UST properly focused on the period in which estate funds were not being maximized, the greater focus is to be placed upon the extraordinary difficulties experienced by the Trustee in administering a most complex estate. Specifically, the Debtor underwent two voluntary Chapter 11 filings, with the second Chapter 11 case being converted to the present Chapter 7 liquidation proceedings in November of 1987. At the time of conversion, the Debtor's directors

had resigned and all employees had either been terminated or had resigned, causing much difficulty for the Trustee to obtain the necessary information and records to administer the Chapter 7 estate. Affidavit, R. Baumgart, ¶ 7. Faced with those obstacles, the Trustee, through tremendous efforts reported $4.68 Million of cash on hand for a dividend of slightly less than 5% to unsecured creditors and funds to cover administrative expense claimants. That dollar figure includes all earned interest through February 25, 1998. See, Supplement to Final Report, March 3, 1998. The Debtor's gross estate, upon which the Trustee's compensation is based, is reported in the amount of $7.9 Million. Id. at p. 2.

Although the estate lost interest income during the period in question, it is remarkable that such loss period reflected less than one-third of the estate's administration, was inadvertently incurred, and represents only a fraction of the interest income which was earned (in excess of $1 Million) during the estate's administration.

Accordingly, the Trustee's final compensation for professional services rendered is awarded in the amount of $125,902.70, reflecting a reduction in the amount of $5,000.00 and is further approved for distribution. This award is in addition to an earlier interim fee awarded in the amount of $106,458.39 to the Trustee. Thusly, the UST's objection is hereby sustained. The Amended Final Report, as supplemented, is hereby approved.

IT IS SO ORDERED.